**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RICHARD WAYNE DREWRY,

Defendant-Appellant.

No. 03-6011

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CR-02-99-R)**

---

Submitted on the Briefs:[*]

Robert G. McCampbell, United States Attorney, and Rozia McKinney-Foster, Assistant U.S. Attorney, Oklahoma City, Oklahoma, on the brief for Plaintiff-Appellee.

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma, on the brief for Defendant-Appellant.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

Before **SEYMOUR**, **MURPHY** and **O'BRIEN**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Richard Wayne Drewry was convicted of five charges of physical and sexual abuse of four children in Indian country in violation of 18 U.S.C. § 2241(c) (aggravated sexual abuse of a child), § 2244(c) (abusive sexual contact with a child under the age of twelve), and § 113(a)(5) (assault against a victim under the age of sixteen). He was sentenced to 210 total months of imprisonment. Mr. Drewry appeals his conviction and sentence, and we affirm.

**I**

Mr. Drewry was the common-law husband of Waka Tabbie Edwards, and they lived together in Virginia. Upon the death of her mother, Ms. Edwards moved to Oklahoma to take care of her six nieces and nephews who had previously been under the care of her mother. Mr. Drewry later joined Ms. Edwards in Oklahoma and was eventually charged with physically and sexually assaulting four of the children. A jury found him guilty on all counts, and this appeal followed.

Mr. Drewry contends the district court committed reversible error on three

grounds: by not properly engaging in the required balancing under Federal Rule of Evidence 403 when it admitted evidence regarding uncharged prior acts of child molestation by Mr. Drewry; by not granting his motion for judgment of acquittal because the government failed to prove the victims were Indians for the purposes of 18 U.S.C. § 1152; by enhancing his sentence under United States Sentencing Guideline § 2A3.1(b)(1). We address each issue in turn.

## II

Mr. Drewry first asserts the district court erred in admitting testimony under Federal Rule of Evidence 414(a) regarding his alleged commission of prior acts of child molestation. He specifically contends the court failed to properly engage in the prejudice analysis required by Rule 403. We will disturb a trial court's decision to admit evidence under Rule 403 only for an abuse of discretion. *United States v. Charley*, 189 F.3d 1251, 1259-60 (10th Cir. 1999).

A district court may exercise its discretion to admit evidence under Rule 414(a) only when a defendant is charged with an offense of child molestation, the proffered evidence is of the defendant's commission of another offense of child molestation, and the court determines the proffered evidence is relevant. *United States v. McHorse*, 179 F.3d 889, 898 (10th Cir. 1999). Although a court must engage in a Rule 403 balancing inquiry in determining whether the evidence is relevant, "under Rule 414 the courts are to 'liberally' admit evidence of prior

uncharged sex offenses." *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997). Because of the unique nature of evidence presented under Rule 414,

> it is important that the trial court "make a reasoned, recorded" statement of its 403 decision . . . . The district court need not make detailed factual findings in support of its Rule 403 determination. However, "[b]ecause of the sensitive nature of the balancing test in these cases, it will be particularly important for a district court to fully evaluate the proffered Rule . . . [414] evidence and make a clear record of the reasoning behind its findings."

*United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998) (citing *United States v. Guardia*, 135 F.3d 1326, 1331-32 (10th Cir. 1998)). Under Rule 403, a court may exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

At trial, the government proffered testimony from Larena Morales regarding Mr. Drewry's acts of child molestation against her some twenty-five years earlier. The district court initially declined to admit this evidence as more prejudicial than probative, expressing concern regarding the extended period of time that had passed since the alleged occurrence of the prior acts. After hearing the testimony of the molestation victims as well as that of Ms. Morales, however, the court determined there were clear similarities between how Mr. Drewry allegedly molested Ms. Morales and the victims in the present case. While the

court repeated its concern regarding the extended time that had passed since the alleged molestation of Morales, it nonetheless held the evidence could be presented because the prior act was so similar to the facts of the present case, thus increasing its probative value. Sufficient factual similarity can rehabilitate evidence of prior uncharged offenses that might otherwise be inadmissible due to staleness. *See, e.g., United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001) (similarity of prior act evidence to charged crime warranted admission of evidence); *Meacham*, 115 F.3d at 1495 ("Similarity of prior acts to the charged offense may outweigh concerns of remoteness in time."); *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997) (same). Moreover, case law makes clear Ms. Morales' testimony was not so stale or old as to undermine its relevance. *See Meacham*, 115 F.3d at 1491-92 (admitting evidence thirty years old and noting that no time limit is imposed on the remoteness of the uncharged offense). We are not persuaded the district court abused its discretion in striking the Rule 403 balance in favor of admitting Ms. Morales' testimony.

Mr. Drewry next challenges the district court's failure to grant his motion for judgment of acquittal. He contends the court lacked jurisdiction because the government failed to present sufficient evidence proving the victims were Indians for purposes of 18 U.S.C. § 1152, which establishes federal jurisdiction over crimes "in which the defendant is an Indian and the victim is a non-Indian, or

vice-versa." *United States v. Prentiss*, 273 F.3d 1277, 1278 (10th Cir. 2001). A reversal of the district court's ruling is not warranted if "'after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. McPhilomy*, 270 F.3d 1302, 1307 (10th Cir. 2001) (quoting *Jackson v. Virginia*, 433 U.S. 307, 319 (1979)).

In *Prentiss*, we determined that to qualify as an Indian under section 1152, an individual is required to have some Indian blood, and be "'recognized as an Indian by a tribe or by the federal government.'" 273 F.3d at 1280 & n.2 (quoting *Scrivner v. Tansy*, 68 F.3d 1234, 1241 (10th Cir. 1995)). The parties accept that each victim here was one-quarter Indian (one-eighth Comanche Indian and one-eighth Kiowa Indian). Mr. Drewry argues the government failed to satisfy the second prong of the *Prentiss* test and prove the children were recognized as Indians by a tribe.

In *United States v. Lawrence*, 51 F.3d 150 (8th Cir. 1995), the Eighth Circuit outlined four factors courts should consider when determining whether an individual is recognized by an Indian tribe or the federal government: "1) tribal enrollment; 2) government recognition formally and informally through receipt of assistance reserved only to Indians; 3) enjoyment of the benefits of tribal affiliation; and 4) social recognition as an Indian through residence on a

reservation and participation in Indian social life." *Id.* at 152. The children in this case were not officially enrolled as members in the Comanche tribe until after the date of at least two of the allegations in the indictment against Mr. Drewry. But enrollment in a tribe is not the only way an individual can show she is an Indian under 18 U.S.C. § 1152. *See United States v. Antelope*, 430 U.S. 641, 646 n.7 (1997) ("enrollment in an official tribe has not been held to be an absolute requirement for federal jurisdiction"); *United States v. Keys*, 103 F.3d 758, 761 (9th Cir. 1996) ("While tribal enrollment is one means of establishing status as an 'Indian' under 18 U.S.C. § 1152, it is not the sole means of proving such status.").

Evidence presented at trial sufficiently satisfied the other factors listed in *Lawrence*. First, the children received medical care from Indian Medical Services and their receipt of such care was not predicated on a determination that they fell within one of the two exceptions allowing for the provision of care to non-Indians. Rather, evidence indicated their medical care was based on an assumption that they were Indians eligible for such treatment. Likewise, the children were permitted to attend a summer camp open only to Comanche children. Their enrollment in the camp was pursuant to the direction of the Comanche tribal chairman who indicated to camp officials that the children were in fact Comanche. The children also participated in the social life of the tribe

through their attendance at pow-wows. Finally, when Mr. Drewry's abuse of the children was reported, the children were taken into tribal rather than state custody. A caseworker from the Indian Child Welfare Office specifically testified that "my boss told us that [the children] were eligible Comanches and they were coming into our custody. If they weren't eligible, they would have gone to DHS custody . . . ." App., vol. IV at 441. Viewing the evidence in the light most favorable to the government, *see McPhilomy*, 270 F.3d at 1307, a rational trier of fact could have found the government established beyond a reasonable doubt that the victims in this case were recognized as Indians by a tribe. The district court did not err in denying Mr. Drewry's motion for judgment of acquittal.

Finally, Mr. Drewry contends the district court improperly enhanced his sentence under United States Sentencing Guideline § 2A3.1(b)(1) for the use of force or threats in the course of sexually assaulting one of the children.[**] In applying this enhancement, we have noted that "in a case involving the sexual abuse of a child, the guidelines provide the sentencing judge with the flexibility

---

[**]Section 2A3.1(b)(1) of the guidelines allows for a four level enhancement to sexual abuse charges where the crime was committed by force or threat pursuant to 18 U.S.C. § 2241(a) or (b). U.S. SENTENCING GUIDELINES MANUAL § 2A3.1(b)(1). Section 2241(a) dictates that aggravated sexual abuse by force or threat includes causing "another person to engage in a sexual act by using force against that other person; or by threatening or placing that other person in fear that any person will be subject to death, serious bodily injury, or kidnapping." 18 U.S.C. § 2241(a).

to apply a force enhancement depending on the facts," *United States v. Reyes Pena*, 216 F.3d 1204, 1211 (10th Cir. 2001), and that "a 'threat of harm sufficient to coerce or compel submission' may be quite different for a child victim than for an adult victim." *United States v. Willie*, 253 F.3d 1215, 1220 (10th Cir. 2001). Reviewing the district court's interpretation of the sentencing guidelines *de novo*, *see id.* at 1218, and recognizing we must "uphold the factual findings of the district court unless they are clearly erroneous, viewing the evidence in the light most favorable to the court's determination," *Reyes Pena*, 216 F.3d at 1211, we conclude the district court did not err in applying section 2A3.1(b)(1) to Mr. Drewry's sentence.

Mr. Drewry digitally penetrated the vagina of an eleven year old girl after commanding the child to place her leg in a chair. Immediately after the assault, Mr. Drewry asked the child to tell him who he was. When she said he was her uncle, he said "'No, I'm a warrior.'" App., vol. IV at 315. Trial testimony further indicated the child had stated that when Mr. Drewry sexually assaulted her, he said he did it so she would trust him. *Id.*, vol. III at 40. The child also testified that she was scared of Mr. Drewry because he was "very violent all of the time" and was "always beating" her and her siblings. *Id.*, vol. IV at 306. In a physical assault against the child prior to the sexual assault, Mr. Drewry pulled her hair, hit her face, threw her to the floor and stomped on her stomach. On another

occasion he stated "he might just kill [her] and bury [her] by the creek." *Id.* at 316.

Viewing this evidence in the light most favorable to the district court's determination, we hold the district court did not err in concluding "the testimony sustains and supports a finding . . . that [this child was] intimidated and threatened over a lengthy period of time, such that submission to the defendant's sexual advances was as a result of the fear of force . . . ." App., vol. VI at 8. *See also Willie*, 253 F.2d at 1220 (history of abuse and threats supports use-of-force enhancement); *Reyes Pena*, 216 F.3d at 1211 ("disparity in coercive power, such as that between an adult and a child" can warrant use-of-force enhancement); *United States v. Knife*, 9 F.3d 705, 706 (8th Cir. 1993) (physical disparity between defendant and child, threats of future violence, the child's fear of defendant's "mere presence," and evidence of defendant's physical abuse against the child justified use-of-force enhancement).

We **AFFIRM** the judgment of the district court.